IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HUDSON EXCESS INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> SUDO BAR & GRILL, LLC, DARIUS COLLIER, and JERROLD GIBBS, <br><br> Defendants. | CIVIL ACTION <br><br> FILE NO. 1:23-cv-00462-ELR |

## HUDSON EXCESS INSURANCE COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## <u>MOTION FOR SUMMARY JUDGMENT</u>

COMES NOW Plaintiff Hudson Excess Insurance Company ("Hudson") and,

pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, N.D.

Ga., files this Memorandum of Law in Support of its Motion for Summary Judgment,

and respectfully shows the Court the following:

### INTRODUCTION

In this clear-cut insurance coverage dispute, Hudson seeks a declaration that

a commercial general liability policy issued to Defendant Sudo Bar & Grill, LLC

("Sudo") does not provide coverage for claims asserted against Sudo following a

non-fatal shooting on its premises. There is no dispute as to the material facts and,

thus, resolution of Hudson's claim for declaratory judgment involves only the

straight-forward application of the relevant policy language. The applicable insurance agreement, in pertinent part, applies only to "bodily injury" caused by an "occurrence," which is defined under the policy as an "accident." The policy also contains a broad weapons exclusion – added by specific endorsement – which applies to bar coverage for any bodily injury arising out of the use of weapons, which is specifically defined to include firearms.

The bodily injuries alleged in the Underlying Actions[1] were indisputably caused by an intentional act, namely an alleged shooting by a patron on Sudo's premises that resulted in gunshot injuries to Defendant Darius Collier ("Collier") and Defendant Jerrold Gibbs ("Gibbs"), and which required subsequent medical treatment. As the policy, in pertinent part, provides coverage only for injuries arising out of "accidents," the Underlying Actions do not fall within the coverage grant in the first instance, as to which Defendants, who seek benefits under the policy, bear the burden of proof. In all events, however, there is no dispute that the alleged bodily injury to Collier and Gibbs arose out of the use of a firearm, and the policy's broad weapons exclusion bars coverage for the Underlying Actions.

---

[1] *Darius Collier v. Sudo Bar and Grill LLC*, Case No. 2022-SV-1461, pending in the State Court of Rockdale County, Georgia (the "Collier Action"); and *Jerrold Gibbs v. Sudo Bar and Grill LLC, et al.*, Case No. 2022-SV-2014, pending in the State Court of Rockdale County, Georgia (the "Gibbs Action") (collectively, the "Underlying Actions").

Accordingly, under the plain language of the insurance contract at issue, there is no coverage for the underlying claims against Sudo.  On these grounds, Hudson respectfully requests that the Court grant Summary Judgment in its favor.

## FACTUAL AND PROCEDURAL BACKGROUND

At the close of discovery and based on the pleadings filed to date, the undisputed material facts are as follows.

### A.    The Policy

Hudson issued Commercial General Liability Policy number HSGM-07353 to Sudo Bar & Grill, LLC, as the Named Insured, for a policy period of May 20, 2021 to May 20, 2022, that provided certain commercial general liability coverage to Sudo pursuant to the policy's terms, conditions, and exclusions (the "CGL Policy").  (ECF 37-1.)  Subject to its terms, conditions, and exclusions, Coverage A of the CGL Policy provides insurance for "bodily injury" caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.* at pp. 18, 20 of 45.) Coverage A includes a "duty to defend the insured against any 'suit' seeking those damages. However, [Hudson] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' … to which this insurance does not apply." (*Id.* at p. 7 of 45.)

Coverage A for "bodily injury" under the CGL Policy, however, is subject to certain terms and exclusions.  In relevant part, an endorsement to the CGL Policy contains the following exclusion:

> This insurance does not apply to "bodily injury" … arising out of, related to, based upon or attributable to the possession or use of a "weapon" by any person, including the failure by any insured to (1) suppress or prevent, by any means, the possession or use of a "weapon"; or (2) render assistance to or seek first aid for any person who suffers "bodily injury".

> B. The following is added as an item to SECTION V – DEFINITIONS:

> "Weapons" means a firearm, knife or any other device used to injure, including if done for purposes of self-defense.

> All other terms and conditions of this policy remain unchanged

(*Id.* at p. 39 of 45) (the "Weapons Exclusion").

As discussed further below, according to its plain language, the Weapons Exclusion bars coverage for the very claims asserted in the Underlying Actions – "bodily injury" arising out of the use of a firearm.

**B.    The Shooting Incident**

On September 5, 2021, while on Sudo's premises, non-party James Simpson allegedly engaged in an argument with a patron and discharged a firearm, resulting in alleged injury to several patrons of Sudo, including Defendants Collier and Gibbs (the "Shooting Incident"). (ECF 37 ¶ 20; ECF 39 ¶ 20; ECF 40 ¶ 20.)

4

### C.    Hudson's First Notice of Loss and Initial Coverage Position

On September 14, 2021, Sudo received a letter regarding Defendant Collier's retention of an attorney (the "Collier LOR"). The Collier LOR asserted that Collier "was shot" and the victim of a "shooting incident" on September 5, 2021 at Sudo's premises. (*Id.* ¶ 21; ECF 37-2.) On September 15, 2021, Sudo received a letter regarding Defendant Gibbs' retention of an attorney (the "Gibbs LOR"). The Gibbs LOR asserted that Gibbs had a potential personal injury claim against Sudo "arising out of the shooting incident" on September 5, 2021 at Sudo's premises. (*Id.* ¶ 22; ECF 37-3.)

On October 29, 2021, Sudo first placed Hudson on notice of the Shooting Incident that allegedly occurred on Sudo's premises by submitting a General Liability Notice of Occurrence/Claim form tendered under the CGL Policy and attaching the Collier LOR and Gibbs LOR (the "Notice of Claim"). (*Id.* ¶ 23, ECF 37-4.) Following its receipt of the Notice of Claim, and its investigation and review, Hudson issued a disclaimer with respect to the Shooting Incident on November 17, 2021 (the "Initial Disclaimer"). (*Id.* ¶ 24; ECF 37-5.) The Initial Disclaimer was based, in part, on Hudson's determination that several individuals (including, specifically, Collier and Gibbs) had been injured as the result of a "shooting," and the application of an exclusion in the CGL Policy barring coverage for "bodily injury" arising out of the possession or use of a weapon. (*Id.*)

5

### D.    The Collier Action and Hudson's Coverage Position

On August 17, 2022, Sudo first provided Hudson with notice of the Collier Action, which had been filed on May 8, 2022. (ECF 37 ¶ 46.) Collier alleges in his Complaint that, while on Sudo's premises, he was "seriously injur[ed]" when an alleged bar patron, James Simpson, started an argument with him. (*Id.* ¶ 28.) Collier alleges generally that Sudo failed to screen Simpson when he entered the premises, failed to intervene, and failed to remove Simpson from the premises. (*Id.* ¶ 29.) Collier seeks to impose premises liability against Sudo, alleging that "Sudo Bar was negligent, and that negligence caused [his] injuries" in violation of O.C.G.A. § 51-3-1. (*Id.* ¶ 31.)   Collier seeks to recover compensatory, special, economic, consequential, general, punitive and all other damages permissible under Georgia law for his alleged pain and suffering.  (*Id.* ¶ 32.)

On September 23, 2022, Hudson, through counsel, acknowledged notice of the potential loss by a letter to Sudo outlining Hudson's coverage position with respect to the Collier Action under the CGL Policy, which was the policy under which the claim had been tendered previously (the "Collier ROR"). (*Id.* ¶ 47; ECF 37-9.) The Collier ROR indicated that, although the Collier Complaint itself was silent as to the nature of what caused Collier's alleged injuries, the Collier LOR asserted previously that Collier had been "shot" and sustained injuries as a result of a "shooting incident." (*Id.*) Further, Hudson noted that the Collier Complaint

"alleges that Sudo 'negligently *failed to screen* Simpson when he entered the bar/restaurant' and 'negligently *failed to maintain adequate security devices* to permit proper use of the property[,] . . . [which] imply Simpson's use of a weapon." (*Id.* (emphasis added).)

Accordingly, in light of an express Weapons Exclusion barring coverage for injuries "arising out of, related to, based upon or attributable to the possession of use of a 'weapon' by any person," Hudson indicated it had "*substantial concerns*" regarding coverage under the CGL Policy due to these allegations and the prior indication that Collier's alleged injuries arose out of a shooting. (ECF 37 ¶ 48; ECF 37-1 at p. 40; ECF 37-9 at p. 3.) However, Hudson advised it would agree to defend Sudo subject to a full reservation of rights to disclaim coverage under the CGL Policy and subject to all defenses available to Hudson whether pursuant to the CGL Policy or available under applicable law. (*Id.*)

### E.    The Gibbs Action and Hudson's Coverage Position

On October 26, 2022, Hudson first received notice of the filing of the Gibbs Action, which had been filed on October 4, 2022. (ECF 37 ¶ 53.) In Gibbs' Initial Complaint, he alleged, like Collier, that, while on Sudo's premises, James Simpson started an argument with another patron which resulted in Simpson "discharging his firearm in the establishment, seriously injuring [Gibbs] and other patrons." (*Id.* ¶ 35.) Gibbs also contended in his Initial Complaint that he "received bullet wounds

to his lower back" as a result, causing him to sustain severe physical injuries. (*Id.* ¶ 36.) Further, he generally alleged that Sudo "negligently failed to screen Simpson when he entered the bar/restaurant, failed to intervene, and failed to remove Simpson from the bar." (*Id.* ¶ 37.)

On November 8, 2022, Hudson disclaimed the duty to defend and/or indemnify Sudo in connection with the Gibbs Action under the CGL Policy, including on the basis that the Shooting Incident did not constitute a covered "occurrence" and that coverage was barred by the Weapons Exclusion (the "Gibbs CPL"). (*Id.* ¶ 54; ECF 37-10.)

On June 28, 2023, Gibbs filed his First Amended Complaint in the Gibbs Action (the "Amended Gibbs Complaint"), which is now the operative complaint. (*Id.* ¶ 39; ECF 37-8.) Gibbs now contends he "received injuries to his lower back, causing him to sustain severe physical injuries[,]" although he omits his allegation from his initial complaint that such injuries were due to "bullet wounds." (*Id.* ¶ 42.) However, Gibbs *continues* to allege in the Amended Complaint that his injuries were sustained as a result of "the subject *shooting incident*." (*See* ECF 37-8 ¶¶ 56, 57 (emphasis added).) Gibbs also alleges "Sudo Bar was negligent, and that negligence caused [his] injuries" in violation of O.C.G.A. § 51-3-1. (ECF 37 ¶ 44.) Gibbs seeks to recover compensatory, special, punitive damages, and expenses of litigation

permissible under Georgia law for his alleged pain and suffering, medical expenses, disability, diminution of earning capacity, and loss of earnings. (*Id*. ¶ 45.)

### F.    Hudson's Declaratory Judgment Action

Hudson filed its Initial Declaratory Judgment Complaint on January 31, 2023. (ECF 1.) On December 8, 2023, Hudson filed its First Amended Complaint for Declaratory Judgment, seeking a declaration from the Court that Hudson has no obligation to defend Sudo in the Underlying Actions and has no indemnity obligation to Sudo, Collier, or Gibbs under the CGL Policy for any loss or other damages allegedly attributable to Sudo stemming from the Underlying Actions and/or arising out of the Shooting Incident. (ECF 37 ¶ 80.)

Hudson is presently defending its insured, Sudo, in connection with the Underlying Actions subject to a full reservation of rights to contest coverage. Hudson has done so since September 23, 2022, with respect to the Collier Action, and December 21, 2022, with respect to the Gibbs Action. (ECF 37-9; ECF 1-10.) The terms of those reservations, under which Hudson contests coverage, are clear. They include, in no uncertain terms, a "right to seek a determination that no coverage is available under the [CGL Policy] for the September 5, 2021 shooting[,]" as well as the commensurate rights to withdraw from the defense, to seek recoupment of any expenses incurred in the defense, and to decline any obligation to indemnify or

136639736.3

defend in the event it is determined no coverage exists. (ECF 1-10 at pp. 2, 6; ECF 37-9 at pp. 3, 6.)

Furthermore, both Collier and Gibbs admit to allegations in Hudson's First Amended Complaint that they sustained injuries when Simpson discharged a firearm on Sudo's premises. (ECF 37 ¶¶ 20, 63, 74; ECF 39 ¶¶ 20, 63, 74; ECF 40 ¶¶ 20, 63, 74.) Collier and Gibbs also admit that they both, respectively, have alleged Sudo's failure to screen Simpson and failure to maintain adequate security devices caused an unreasonable risk of injury. (ECF 37 ¶¶ 29, 37, 64, 76; ECF 39 ¶¶ 29, 37, 64, 76; ECF 40 ¶¶ 29, 37, 64, 76.)

Moreover, during discovery in this action, Hudson served requests for admissions on Collier and Gibbs. Collier provided responses on May 2, 2024, and Gibbs responded on April 22, 2024 (attached hereto as Exhibit A and Exhibit B, respectively.)  In their responses, both Collier and Gibbs admit to receiving medical treatment in the emergency department at Grady Memorial Hospital on September 5, 2021, for injuries sustained from the firearm that was discharged that same day at Sudo Bar & Grill. (*See* Ex. A, p. 2, Ex. B, pp. 3-4.) Further, Defendant Gibbs specifically admits that he was injured by a firearm that was discharged on Sudo's premises on the day of the alleged Shooting Incident. (Ex. B, p. 3.) In addition, Defendant Collier admits to sustaining gunshot wounds to his right elbow, right hip,

and left ear on the day of the alleged Shooting Incident on Sudo's premises. (Ex. A, p. 3.)

## ARGUMENT AND CITATION OF AUTHORITY

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Patton v. Triad Guar. Ins. Corp.,* 277 F.3d 1294, 1296 (11th Cir. 2002). But the Court is only required to draw those inferences that are *reasonable. Fed. Ins. Co. v. United Cmty. Banks, Inc.*, No. 2:08-CV-0128-RWS, 2010 WL 3842359, at *11 (N.D. Ga. Sept. 27, 2010) (Story, J.). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, *Inc.,* 477 U.S. 242, 249-50 (1986) (internal citations omitted).

### B.    Georgia Contract Interpretation and The Duty to Defend

Under Georgia law, insurance policies are written contracts and, therefore, are subject to the standard rules of contract construction. *Dixon v. Midland Ins. Co.,* 168 Ga. App. 319, 322, 309 S.E.2d 147, 150 (1983). The interpretation of an insurance policy is a question of law for the Court to resolve. O.C.G.A. § 13-2-1. "[I]n

construing an insurance policy, a court must first decide whether the language is clear and unambiguous." *Club Libra, Inc. v. R.L. Kine Props., LLC*, 324 Ga. App. 547, 548, 751 S.E.2d 418, 419 (2013) (internal quotations omitted).  Ambiguity only exists when "more than one reasonable construction may be placed upon the language of an agreement." *Estate of Pitts v. City of Atlanta*, 323 Ga. App. 70, 76, 746 S.E.2d 698, 702 (2013) (citations omitted). If the insurance policy is clear and unambiguous, "the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." *Club Libra*, 324 Ga. App. at 548, 751 S.E.2d at 419 (citations omitted).  As stated by the Georgia Court of Appeals:

> Where an insurance contract provision is clear and unambiguous, its interpretation is a matter for the court. [I]f the policy exclusions are unambiguous they must be given effect even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.

*First Specialty Ins. Corp. Inc. v. Flowers,* 284 Ga. App. 543, 545, 644 S.E.2d 453, 455 (2007) (internal quotation and citation omitted).

Under Georgia law, the insured bears the initial burden of proving a claim falls within the scope of the insuring agreement. *Georgia Farm Bureau Mut. Ins. Co. v. Hall Cty.*, 262 Ga. App. 810, 812 (2003). Additionally, an insurer seeking to invoke a policy exclusion "can carry its burden of showing that the exclusion applies by relying exclusively upon the allegations against the insured in the underlying

complaint." *See Flowers,* 284 Ga. App. 543, at 544. Once the insurer meets this burden, "the burden then shifts to the [insured] to come forward with other evidence creating a genuine issue of fact over whether the exclusion is applicable." *Id.* at 544 n.2 (internal citations omitted).

When determining whether an insurer has a duty to defend its insured, the initial inquiry is to compare the policy provisions to the allegations raised in the complaint against the insured. *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 407 (2012). Undisputed extraneous facts known to the insurer, however, can also be introduced to show there is no coverage. *See Capitol Specialty Ins. Co. v. PTAV, Inc.*, 331 F. Supp. 3d 1329, 1333-34 (N.D. Ga. 2018) (under Georgia law, "[i]f the [underlying] complaint, including facts outside of the complaint that are known to the insurer, does not assert a claim that is covered, the insurer is justified in refusing to provide the insured a defense"); *U.S. Liab. Ins. Co. v. Griffith*, No. 1:16-cv-01735-ELR, 2017 WL 3521644 (N.D. Ga. May 10, 2017) (firearms exclusion applied where, despite the underlying complaint "not specifically referenc[ing] a shooting or firearm," the undisputed, extraneous evidence indicated claimant suffered a single gunshot wound) (Ross, J.); *Harden v. State Farm Fire & Cas. Co.*, 269 Ga. App. 732, 734 (2004) (extrinsic evidence of an *Alford* plea was sufficient to establish a prima facie case that insurer had no duty under the terms of the policy to provide coverage or a defense for insured's alleged liability); *cf BBG Design Build, LLC v.*

*S. Owners Ins. Co.*, 820 F. App'x 962, 965 (11th Cir. 2020) ("[I]n special circumstances, a court may consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage.") (Florida law); *Monroe Guaranty Ins. Co. v. BITCO General Ins. Corp.*, 640 S.W.3d 195, 201 (Tex. 2022) (holding that, although the "eight-corners" rule remained the "initial inquiry to be used," where the underlying complaint was silent as to facts germane to coverage, extrinsic evidence could be considered "provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved").

### C.    The Shooting Incident Was an Intentional Act, Not A Covered "Occurrence"

The Underlying Actions are not covered under the CGL Policy because the bodily injury alleged was not caused by an "occurrence" or "accident," but by the intentional conduct of James Simpson in connection with the Shooting Incident.  A similar issue was addressed by the Georgia Court of Appeals in *Capitol Indemnity Corp. v. L. Carter Post 4472 Veterans of Foreign Wars, Inc.*, 225 Ga. App. 354, 484 S.E.2d 52 (1997).  In that case, the claimant in the underlying action was injured when he was stabbed by another patron of the insured property owner.  *Id.* at 355. The claimant sued the insured, alleging that the insured negligently allowed the patron to come on its premises. Like the CGL Policy at issue here, the policy in

*L. Carter Post* limited coverage to "bodily injury" caused by an "occurrence," which was defined in relevant part as an "accident." *Id.* at 354. The court held that the claims against the insured were not covered because "the stabbing by another patron, was not an 'accident' as defined by the policy." *Id.* Rather, like here, it was the result of *intentional* conduct.

Numerous decisions, including those by the Eleventh Circuit, have adopted the approach taken by the Georgia Court of Appeals in *L. Carter Post*. *See SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1214-17 (11th Cir. 1999) (collecting cases and rejecting the argument that whether an event is an "accident" must be measured from standpoint of insured); *Companion Prop. & Cas. Ins. Co. v. Mathis*, 140 F. App'x 885, 886 (11th Cir. 2005) (reaffirming *SCI Liquidating*) (per curiam); *O'Dell v. St. Paul Fire & Marine Ins. Co.*, 223 Ga. App. 578, 580, 478 S.E.2d 418, 420 (1996) (no coverage for negligent retention claims brought against hotel operator arising out of employee's alleged conduct: "Given the allegations that O'Dell committed sexual harassment and assault and battery, which are by their nature intentional, we cannot conclude that bodily injury, if any, was caused by an accident."); *Presidential Hotel v. Canal Ins. Co.*, 188 Ga. App. 609, 373 S.E.2d 671, 673 (1988) (no coverage for claims asserted against hotel arising from sexual harassment allegations).

The court's holding in *L. Carter Post* is also aligned with the Georgia Supreme Court's explanation that "in its usual and common usage, 'accident' refers to 'an unexpected happening without intention or design,' … an 'event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result,' … or '[s]omething that occurs unexpectedly or unintentionally.'" *Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 293 Ga. 456, 460, 746 S.E.2d 587, 591 (2013) (internal citations omitted). "Standing alone, the word is not used usually and commonly to convey information about the nature or extent of injuries worked by such a happening, much less the identity of the person whose interests are injured." *Id.* As is evident from this authority, the term "accident" does not indicate or concern whether a third party to an event (e.g., a bar owner) reasonably expected or intended the event to occur (e.g., a shooting in the bar by a patron). Instead, in common usage, it focuses solely on the intent of the actor himself (e.g., the assailant).

This conclusion – that an intentional act by a third-party is not an "occurrence" under a commercial general liability policy – is bolstered by comparison of the language of the insuring agreement to the Expected or Intended Injury Exclusion. Under that form exclusion, there is no coverage for "bodily injury" that is "expected or intended *from the standpoint of the insured*." (ECF 37-1 at p. 8 of 45.) Under the insuring agreement, however, the only relevant inquiry is whether

136639736.3

the event is an "accident" or not.  Where the parties intended that such inquiry be measured from the standpoint of the insured (i.e., did the insured intend for the event to occur?), they did so expressly.

It is undisputed that the bodily injuries alleged in the Underlying Actions were not accidental, but the result of an intentional shooting of several patrons by another. But for James Simpson's intentional act, the bodily injuries alleged by Collier and Gibbs would not have occurred. Because Hudson's CGL Policy, in pertinent part, provides coverage only for bodily injury caused by an "occurrence," or "accident," the Underlying Actions are not covered under the CGL Policy at issue in this matter. Thus, summary judgment in favor of Hudson is warranted.

### D.    The Plain Language of the CGL Policy's Weapons Exclusion Bars Coverage for the Underlying Actions

Even if the Underlying Actions did allege "bodily injury" caused by an "occurrence," the Weapons Exclusion would nevertheless apply to bar coverage. The Weapons Exclusion – which excludes coverage for "bodily injury . . . arising out of the  . . . use of a 'weapon'" – is broad, but not ambiguous. Moreover, under Georgia law, a court "is [not] at liberty to rewrite or revise a contract under the guise of construing it."  *Fernandes v. Manugistics Atlanta*, 261 Ga. App. 429, 433, 582 S.E.2d 499, 503 (2003).  Thus, the rule of liberal construction of an insurance policy cannot be used to create an ambiguity where none, in fact, exists.  *See Southeastern Fire Ins. Co. v. Heard*, 626 F. Supp. 476, 477 (N.D. Ga. 1985).  As the Eleventh

Circuit has explained, under Georgia law "[n]o ambiguity exists where, examining the contract as a whole and affording *the words used therein* their plain and ordinary meaning, the contract is capable of only one reasonable interpretation." *Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1231 (11th Cir. 2017) (emphasis added and citation omitted).

These well-established principles clearly demonstrate the Underlying Actions are barred from coverage due to the plain language of the Weapons Exclusion.  For example, in *Capitol Indemnity, Inc. v. Brown*, 260 Ga. App. 863, 581 S.E.2d 339 (2003), the Georgia Court of Appeals addressed whether an assault and battery exclusion barred coverage for a negligent security action arising out of, as here, the shooting of one patron of a by another patron.  *Id.* at 863.  The exclusion at issue barred coverage for "any claim or suit for bodily injury … arising out of or related to any … Assault [or] Battery …."  *Id.* at 864. The insured argued that the parties intended that the exclusion would only apply to assaults by the insured's employees, citing to a reference in the exclusion to negligent employment practices. *Id.* at 866. The issue presented for the court was whether the exclusion applied to actions by individuals other than the insured or its employees.  *Id.*  The court held that it unambiguously did:

> [T]he exclusion specifically encompasses *any* claim arising out of an assault or battery.  Although the exclusion clearly applies to an assault by a negligently employed security guard, *nothing*

> *in the provision limits it to such assaults or exempts third-party*
> *assaults from its reach.*

*Id.* (emphasis added).  As such, the court concluded that it "[could] not accept [the insured's] extremely narrow interpretation of the exclusion."  *Id.  See also Al Who Enters. v. Capitol Indem. Corp.*, 217 Ga. App. 423, 426, 457 S.E.2d 696, 698 (1995) (holding that policy exclusion, stating that "insurance does not apply to bodily injury . . . arising out of assault [or] battery," precluded coverage for premises liability claims by battery victims against nightclub where incident occurred); *Boomer's, Inc. v. Whitney*, 226 Ga. App. 195, 195, 486 S.E.2d 59, 60–61 (1997) (same).

Moreover, in *United States Liability Insurance Company v. Griffith*, No. 1:16-cv-01735-ELR, 2017 WL 3521644 (N.D. Ga. May 10, 2017), this Court addressed a similar weapons exclusion that broadly excluded bodily injury "arising out of firearms."  *Id.* at *3.  The insureds contended that the weapons exclusion was "only applicable to claims arising out of firearms used, operated, or maintained *by the insureds*," and it was undisputed the shooter was not an insured under the policy. *Id.* (emphasis in original).

Addressing this contention, this Court first acknowledged that it was "without the authority to interpret, rewrite, or change the terms of an unambiguous insurance policy," and that a court "must not strain to extend coverage where none was contracted or intended."  *Id.*  The Court then concluded that "the interpretation

suggested by the [insureds] would require the Court to ignore the plain language of the Policy and include a limitation *not otherwise present on its face*." *Id.* (emphasis added). Further, this Court held that the weapons exclusion was unambiguous and "plainly precludes coverage for any claim that has any causal connection to firearms, *irrespective of the theory of liability* or who used the firearm." *Id.* (emphasis added). *See also Hudson Specialty Ins. Co. v. Snappy Slappy LLC*, No. 5:18-CV-00104-TES, 2019 WL 1938801, at *1 (M.D. Ga. May 1, 2019); *Davis v. Capitol Specialty Ins. Corp.,* No. 1:13-cv-20723, 2014 WL 4418845 (S.D. Fla. Jan. 2, 2014) (no coverage for an underlying action based on a shooting at a nightclub due to policy exclusion for "bodily injury . . . that arises out of, is based upon or attributable to the use of a firearm(s)"); *Capitol Specialty Ins. Corp. v. JBC Entm't Hldgs., Inc.*, 172 Wash. App. 328, 337-38, 289 P. 3d 735, 740 (2012) (limited firearms exclusion to only the *insured's* use of a firearm was "contrary to the plain language of the policy," and "a reasonable consumer would give the firearms exclusion the literal reading its clear terms demand").

The weapons exclusion at issue in *Chartis Specialty Insurance Company v. Powe*, No. 1:16-cv-1336-SCJ, 2017 WL 3525441 (N.D. Ga. June 1, 2017), was similarly broad, and it precluded coverage for "any liability arising out of any firearm or weapon." *Id.* at *3. The insured argued that to apply the exclusion to a claim arising from alleged negligent security involving the use of a firearm required

the court to broaden the language of the exclusion. *Id.* at *2. The court disagreed. It held that "any" firearm means "one wielded by an insured. It means one in the possession of the victim. It even means one in the trunk of a car owned by the accident victim (if somehow that hidden gun caused liability)." *Id.* at *3. Acknowledging the breadth of the weapons exclusion, the district court reiterated the cardinal rule that "breadth does not translate to ambiguity," and that such breadth "injects no opacity that requires resort to anything beyond the usual contract construction canons." *Id.* at *5.

Here, the Weapons Exclusion is equally as broad as the exclusions analyzed and applied in *Capitol Indemnity*, *Griffith*, and *Powe*. It broadly excludes claims for "bodily injury . . . arising out of, related to, based upon or attributable to the possession or use of a "weapon" by any person, including the failure by any insured to . . . suppress or prevent, by any means, the possession or use of a 'weapon'."

There is no dispute that the Underlying Actions involve "bodily injury" that "arises out of"[2], or is related to, based upon or attributable to, the use of a weapon.

---

[2] As the Eleventh Circuit has explained:

> When the phrase 'arising out of' is found in an exclusionary clause of an insurance policy, [Georgia courts] apply the 'but for' test traditionally used to determine cause-in-fact for tort liability. [T]he exclusionary clause is focused solely upon the genesis of the underlying plaintiff's claims—if those claims arose out of the excluded acts ... then coverage need not be provided. Claims arise out of [t]he excluded

In the Initial Gibbs Complaint, Amended Gibbs Complaint, and in his discovery responses, Gibbs directly acknowledges and admits his injuries arise out of Simpson shooting him. (*See* ECF 1-8 ¶¶ 18, 38; ECF 37-8 ¶¶ 56, 57; Ex. B, p. 3.) And despite Collier's efforts to intentionally omit any reference to the Shooting Incident from his complaint, the Collier LOR, discovery responses, and medical records produced by Collier (attached hereto as "Exhibit C") likewise reveal that his injury arises out of the use of a weapon. (ECF 37-2, p. 1; Ex. A. pp. 2-3; Ex. C, pp. 6-10.) Consequently, it cannot be disputed that the Shooting Incident forming the basis of the Underlying Actions involves a "weapon," as defined by the Weapons Exclusion of the CGL Policy and, further, that but for the Shooting Incident, Collier and Gibbs' respective injuries would not have occurred. The use of a "weapon" is thus the "but for" cause of their claims against Sudo. Accordingly, the Underlying Actions are excluded under the plain language of the Weapons Exclusion in the CGL Policy.

By including a bargained-for exclusion barring coverage for bodily injury arising out of the use of a weapon by *any person*, the parties clearly intended to

---

conduct when 'but for' that conduct, there could be no claim against the insured.

*Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 609 F. App'x 578, 588 (11th Cir. 2015) (citing *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 114, 722 S.E.2d 923, 927 (2012)); *see also Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 110 F. Supp. 3d 1285, 1307 (N.D. Ga. 2014) (Jones, J.).

exclude, at a minimum, injury resulting from a firearm. A contrary ruling would require the Court to rewrite or change the terms of an unambiguous insurance contract, in contravention of Georgia law. As in *Capitol Indemnity*, *Griffith*, and *Powe*, the plain language of the exclusion here bars coverage for the Underlying Actions.

## CONCLUSION

For the reasons set forth above, there is no coverage under the CGL Policy for the Underlying Actions arising out of the Shooting Incident. The plain language of the CGL Policy extends coverage only for those bodily injuries caused by "occurrences" or "accidents;" alleged bodily injuries caused by intentional acts plainly do not fall within the insuring agreement. Moreover, in all events, coverage for the Underlying Actions is barred by the clear terms of the Weapons Exclusion, which unambiguously turns on action, not actor, and indisputably applies here.

**WHEREFORE**, Hudson respectively requests that the Court grant its Motion for Summary Judgment. As a matter of law, Hudson is entitled to a declaration that it has no obligation to defend Sudo in the Underlying Actions and has no indemnity obligation to Sudo, Collier, or Gibbs under the CGL Policy for any loss or other damages allegedly attributable to Sudo stemming from the Underlying Actions and/or arising out of the Shooting Incident.

136639736.3

Respectfully submitted this 20th day of August, 2024.

**CARLTON FIELDS, P.A.**

*/s/ Christopher B. Freeman*
Christopher B. Freeman
Georgia Bar No. 140867
Nicole A. Stone
Georgia Bar No. 385226
1201 West Peachtree Street
Suite 3000
Atlanta, Georgia 30309
(404) 815-3400
(404) 815-3415 (fax)
cfreeman@carltonfields.com
nstone@carltonfields.com

***Attorneys for Plaintiff Hudson Excess
Insurance Company***

24

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the above motion was prepared using one of the approved font and type selections under Local Rule 5.1(c), namely, 14-point Times New Roman.

/s/ Christopher B. Freeman
Christopher B. Freeman
Georgia Bar. No. 140867

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 20, 2024, I electronically filed the foregoing with the Clerk by using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system.

*/s/ Christopher B. Freeman*
Christopher B. Freeman
Georgia Bar No. 140867

136639736.3